UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

**Docket Number(s):** 23-7868

**Motion for:** Stay of the Mandate Pending the Filing of a Petition for Writ of Certiorari

**Caption [use short title]**

Board of Trustees of the Bakery Drivers Local 550 and Industry Pension Fund v. PBGC

Set forth below precise, complete statement of relief sought:

PBGC respectfully requests that the Court stay the issuance of the mandate for 90 days.

**MOVING PARTY:** PBGC
**OPPOSING PARTY:** Board of Trustees of the Bakery Drivers Local 550 and Industry Pension Fund

☐ Plaintiff  ☒ Defendant
☐ Appellant/Petitioner  ☒ Appellee/Respondent

**MOVING ATTORNEY:** Benjamin Kelly
**OPPOSING ATTORNEY:** Douglas A. Hastings

[name of attorney, with firm, address, phone number and e-mail]

PBGC, 445 12th St. S.W., Washington D.C. 20024
Morgan Lewis, 1111 Pennsylvania Ave, N.W. Washington D.C. 20004

202-294-1518
202-739-3000

Kelly.Benjamin@pbgc.gov
douglas.hastings@morganlewis.com

**Court- Judge/ Agency appealed from:** United States District Court for the Eastern District of New York, Judge Joan M. Azrack

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes  ☐ No (explain):

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**
Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No

Requested return date and explanation of emergency:

Opposing counsel's position on motion:
☐ Unopposed  ☒ Opposed  ☐ Don't Know

Does opposing counsel intend to file a response:
☒ Yes  ☐ No  ☐ Don't Know

Is the oral argument on motion requested?  ☐ Yes  ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  ☒ No  If yes, enter date:

**Signature of Moving Attorney:**
BENJAMIN KELLY  Digitally signed by BENJAMIN KELLY  Date: 2025.07.24 14:43:41 -04'00'
**Date:** 07-24-2025  **Service:** ☒ Electronic  ☐ Other [Attach proof of service]

**Form T-1080** (rev. 10-23)

# 23-7868

## United States Court of Appeals
### FOR THE SECOND CIRCUIT

_____

BOARD OF TRUSTEES OF THE BAKERY DRIVERS
LOCAL 550 AND INDUSTRY PENSION FUND,

*Plaintiff-Appellant,*

v.

PENSION BENEFIT GUARANTY CORPORATION,

*Defendant-Appellee,*

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

_____

MOTION TO STAY THE MANDATE
PENDING THE FILING OF A
PETITION FOR WRIT OF CERTIORARI

_____

Karen L. Morris
*General Counsel*
Daniel Liebman
*Deputy General Counsel*
Benjamin T. Kelly
*Deputy Assistant General Counsel*
Emily J. Allender
*Attorney*

Pension Benefit
Guaranty Corporation
445 12th St. S.W.
Washington D.C.
20024-2101
202-294-1518

Pursuant to Fed. R. App. P. 41(d)(1), Pension Benefit Guaranty Corporation ("PBGC") respectfully requests that the Court issue an order to stay the issuance of its mandate, currently scheduled to be issued on July 24, 2025, and to hold this case in abeyance pending PBGC's potential filing of a petition for a writ of certiorari in the Supreme Court.

1. When the Board of Trustees of the Bakery Drivers Local 550 and Industry Pension Fund (the "Fund") filed its appeal in this action, the issue before the Court was clear: can a terminated multiemployer plan be restored by the plan sponsor so as to have a zone status that could make the plan eligible for special financial assistance ("SFA")?[1] In the initial briefs, neither the Fund nor PBGC

---

[1] In its "Opening Brief," the Fund listed the issues presented as:

> 1. Can a multiemployer plan that has been terminated be restored by the plan sponsor taking essentially the same actions that would create a new plan in the first place, such that it can be eligible for SFA just like any other plan?
>
> 2. Does 29 U.S.C. § 1347 govern only PBGC's ability to restore a terminated plan or halt the termination of a plan that "is in the process of being terminated," but does not prohibit or otherwise restrict a plan sponsor's ability to do so; or alternatively does 29 U.S.C. § 1347 mean that a plan sponsor or administrator never has the power to restore a terminated plan or to halt the termination of a plan once the termination process has commenced, because only PBGC has such power?

2

addressed whether a terminated multiemployer plan, without a zone status, could be eligible for SFA.

2. The Court raised the issue of its own accord at the December 12, 2024 oral argument. The Court subsequently ordered the parties to file supplemental letter briefs by January 21, 2025.[2] Specifically, the Court asked the parties to "address the eligibility of terminated plans under 29 U.S.C. § 1432(b)(1)(A) in light of that subsection's incorporation by reference of the definition found in 29 U.S.C. § 1085(b)(6)."[3]

3. Under 29 U.S.C. § 1432(b)(1)(A), a plan is eligible for SFA if it was "in critical and declining status (within the meaning of section 1085(b)(6) of this title)" between 2020 and 2022.

4. On April 29, 2025, the Court issued its Opinion holding that "by using the phrase 'within the meaning of section 1085(b)(6)' . . . the SFA statute

---

> 3. Did the district court err by deferring to PBGC's interpretation of the Special Financial Assistance provisions in the [American Rescue Plan Act of 2021] and other provisions of ERISA under *Chevron USA Inc. v. NRDC*, 467 U.S. 837 (1984).

Dkt. 32 at 5. *See id.* at 2 ("The key premise for the district court's erroneous decision was that the Fund was a terminated plan. But the Fund here was not a terminated plan when it applied for SFA or when PBGC denied its application.").
[2] Dkt. 60.
[3] *Id.*

3

incorporates by reference only the definition contained in section 1085(b)(6). It does not incorporate external limitations on section 1085's operation, such as the limitation contained in section 1081(c) [providing that ERISA's funding rules no longer apply after plan termination]."[4] Accordingly, "the words that Congress chose to codify eligibility for SFA do not support a per se exclusion of terminated plans under 1432(b)(1)(A)."[5]

5. On June 18, 2025, PBGC filed a petition for a panel rehearing and rehearing en banc.[6] On July 17, the Court issued an order denying that relief.[7]

6. PBGC anticipates that it may file a petition for a writ of certiorari on this issue.

7. Fed. R. App. P. 41(d)(1) provides that a motion to stay the mandate "must show that the petition would present a substantial question and that there is good cause for a stay."

8. PBGC's petition will plainly present a substantial question for the Supreme Court: whether this Court correctly decided that under 29 U.S.C. § 1432(b)(1)(A), a multiemployer pension plan may be eligible for special financial assistance ("SFA") even if it has terminated. This taxpayer-funded

---

[4] Op. 10.
[5] *Id.* at 13.
[6] Dkt. 72.
[7] Dkt. 74.

program has so far paid out $73 billion in taxpayer-funded assistance to 124 plans.

9. The Court's interpretation of section 1432(b)(1)(A)—an interpretation that neither party advocated for before oral argument[8]—is belied by the fact that section 1085(b)(6) is governed by the limitations in section 1081(c) of ERISA, and that when Congress in section 1432(b)(1)(A) referenced section 1085(b)(6), it referenced a provision that has long been limited to plans that have not been terminated. While the Court held that section 1432(b)(1)(A)'s cross-reference to 1085(b)(6) "cuts and pastes" the referenced statute, the Court failed to consider that under ERISA's statutory scheme, section 1085(b)(6) necessarily excludes terminated plans. For that reason, Congress did not need to expressly exclude terminated plans as ineligible for SFA under section 1432(b)(1)(A), as it did under section 1432(b)(1)(D).

10. The Court's decision also disregards parallel Internal Revenue Code provisions governing eligibility, which specifically require a plan to have been *in* critical and declining status between 2020 and 2022—and which therefore make a terminated plan ineligible for SFA.

---

[8] Before the District Court, the Fund recognized the "complicated question" of whether a terminated plan could be eligible for SFA, before "explicitly conced[ing] that currently terminated plans do not have a zone status." October 26, 2023 Order at 8, 23-cv-1595, ECF 33. Because "a terminated plan does not have a zone status," the District Court concluded, it "cannot qualify for SFA under [1432(b)(1)(A)]."

5

11. Resolution of the question will have extraordinary operational and budgetary consequences. The Court's holding could render as many as 130 terminated multiemployer plans eligible for as much as $6.6 billion of taxpayer-funded SFA,[9] far beyond what the statute contemplated.

12. There is also good cause for a stay. To obtain a stay, a movant must demonstrate "(1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay."[10] Given the importance of determining the criteria for SFA eligibility and the amount of taxpayer dollars at stake, there is at least a reasonable probability that four Justices will vote to grant certiorari. And the legal arguments available to PBGC[11] demonstrate at least a fair prospect that the Supreme Court will vote to reverse the Second Circuit.

---

[9] Already, in light of the April 29 Opinion, more than thirty terminated multiemployer plans have joined PBGC's waiting list to apply for SFA. *See* PBGC Inspector General Nicholas Novak, "Risk Advisory re: Recent Court of Appeals Ruling May Cost Taxpayers Approximately $6 Billion More in Special Financial Assistance than Originally Projected," June 16, 2025, http://www.oversight.gov/sites/default/files/documents/reports/2025-06/SR-2025-09.pdf. PBGC's Inspector General notes in the Risk Advisory that "[u]nless PBGC and its Board agencies take immediate action, the result could be a significant waste of taxpayer dollars, and PBGC may not be able to meet its statu[to]ry obligation in regard to the SFA program." *Id.* at 2.

[10] *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).

[11] *See* ¶¶ 9-10, *supra*.

13. Finally, there is a significant likelihood that irreparable harm will result from the denial of a stay. If a stay is not granted, PBGC expects that many terminated plans in the Second Circuit will submit SFA applications. Under the statute, any application that is not denied within 120 days will be deemed approved.[12] As PBGC has informed the Court,[13] an influx of SFA applications would severely challenge PBGC's capacity to fully review the applications within the 120-day period. Without a stay, PBGC expects it will pay billions of taxpayer dollars to terminated plans, including to plans whose applications are deemed approved without the benefit of a thorough actuarial review. Even if the Supreme Court ultimately reverses the Second Circuit, PBGC's ability to rescind an approved application and recoup SFA funds is uncertain.

14. PBGC also expects that terminated multiemployer plans outside the Second Circuit will apply for SFA. If PBGC denies those applications on the basis of ineligibility, it may create a circuit split. But it may not be possible for a circuit split to materialize or to otherwise resolve the legal issues before the statutory life of the SFA program ends,[14] or for PBGC to recover money previously paid out to

---

[12] 29 U.S.C. § 1432(g).

[13] *See* Suppl. Br. at 8, Dkt. 62.

[14] Initial applications for SFA must be received by December 31, 2025, and revised applications by December 31, 2026. 29 U.S.C. § 1432(f). All SFA must be paid by September 30, 2030. 29 U.S.C. § 1432(g).

7

plans later determined to be ineligible.

For these reasons, PBGC respectfully requests that the Court stay the mandate for 90 days. Consistent with Local Rule 27.1(b), PBGC has informed opposing counsel of this motion. Opposing counsel has informed PBGC that it opposes this motion and will file a response.

Dated: July 24, 2025           Respectfully submitted,

Washington, DC           /s/ Benjamin T. Kelly
                                       Benjamin T. Kelly

                                       KAREN L. MORRIS, General Counsel
                                       DANIEL S. LIEBMAN, Deputy General Counsel
                                       BENJAMIN KELLY, Deputy Asst. General Counsel
                                       EMILY ALLENDER, Attorney
                                       PENSION BENEFIT GUARANTY CORPORATION
                                       445 12th Street, S.W.
                                       Washington, D.C. 20024-2101
                                       Telephone: (202) 294-1518
                                       Email: kelly.benjamin@pbgc.gov & efile@pbgc.gov

# Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the Motion requirements of Fed. R. App. P. 27(d), and the word limit requirement of Fed. R. App. P. 27(d)(2)(A) because

   ☐ this document contains 1,502 words which include footnotes.

   ☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it complies with Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

   ☐ this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font

   ☐ this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

/s/ Benjamin T. Kelly

Attorney for:

Pension Benefit Guaranty Corp

Dated: July 24, 2025

9

## CERTIFICATE OF SERVICE

I certify that on July 24, 2025, I electronically filed this Motion for the Defendant-Appellee, and that all parties in the case are represented by registered CM/ECF users.

I further certify that, on the same day, a PDF copy of this brief was emailed to opposing counsel.

/s/ Benjamin T. Kelly
Benjamin T. Kelly
Pension Benefit
Guaranty Corporation
445 12th Street S.W.
Washington, D.C. 20024-2101
Telephone: (202) 294-1518
Email:kelly.benjamin@pbgc.gov
& efile@pbgc.gov
