# 23-7868

## In the United States Court of Appeals
### FOR THE SECOND CIRCUIT

BOARD OF TRUSTEES OF THE BAKERY DRIVERS LOCAL 550 AND
INDUSTRY PENSION FUND,

*Plaintiff - Appellant*,

v.

PENSION BENEFIT GUARANTY CORPORATION,

*Defendant - Appellee*.

On Appeal from the United States District Court
for the Eastern District of New York,
No. 2:23-cv-1595, Hon. Joan M. Azrack

## OPPOSITION TO PENSION BENEFIT GUARANTY CORPORATION'S MOTION TO STAY THE MANDATE

Douglas A. Hastings
Brendan J. Anderson
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004

Jeremy P. Blumenfeld
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market St.
Philadelphia, PA 19103

## INTRODUCTION

On April 29, 2025, a panel of this Court unanimously reversed the district court and held that appellant Board of Trustees of the Bakery Drivers Local 550 and Industry Pension Fund ("the Fund") was entitled to Special Financial Assistance ("SFA") under the American Rescue Plan Act—financial assistance that the Fund's pensioners sorely need. Despite that urgent need, PBGC has refused to grant SFA to the Fund while it filed a petition for panel rehearing and rehearing en banc with this Court, which this Court denied, without calling for a response, on July 17, 2025. Now in a further effort to delay giving the Fund the relief to which this Court has held it is entitled, PBGC moves to stay the mandate because it "may"—not will— "file a petition for a writ of certiorari on this issue." Mot. at 4. This motion to stay the mandate should be denied.

To start, PBGC identifies no circuit split, no other pending cases that could create a circuit split, no conflict with Supreme Court precedent, and nothing else that would make it likely that the Supreme Court would grant certiorari on what PBGC acknowledges is a case of first impression, if PBGC even decides to file a petition. PBGC identifies no circumstance where the Supreme Court has granted a petition for certiorari under similar circumstances.

Moreover, while a stay of the mandate would have a huge and direct negative financial impact on the Fund's participants and beneficiaries (retirees who should

1

have received their hard-earned money years ago), it actually *would not address* the purported "irreparable harm" identified by PBGC in its motion. PBGC complains about *other* applications for SFA by *other* multiemployer plans that PBGC will have to decide, for plans both inside and outside the Second Circuit. But staying the mandate, or issuing the mandate, has no impact on those *other applications*, or the persuasive or binding effect of this Court's opinion in those other matters. Those other applications will proceed (or not) before PBGC in light of this Court's opinion and judgment. And *that is true regardless of whether the mandate is issued now or stayed*.

As this Court well-knows, staying the issuance of the mandate merely stops jurisdiction from returning to the district court *in this case*—meaning it prevents the district court here from carrying out this Court's instructions to "(1) enter summary judgment for the Fund, (2) vacate the PBGC's denial of the Fund's SFA application, and (3) remand to the PBGC for reconsideration." *Board of Trustees of the Bakery Drivers Local 550 and Industry Pension Fund v. Pension Benefit Guaranty Corporation*, 136 F.4th 26, 31 (2d. Cir. 2025). In other words, a stay of the mandate would only mean that other multiemployer pension plans (the ones PBGC complains about) potentially benefit from this Court's decision before the Fund does.

The Fund brought this action in the first place because its participants and beneficiaries were in dire financial need. That need has only grown since then.

2

PBGC's petition should therefore be denied as expeditiously as possible to allow the Fund's participants and beneficiaries to start receiving the benefits that have been delayed far too long.

## ARGUMENT

For this Court to have discretion to stay the mandate, PBGC must show that its petition for certiorari, which it admits it has not decided to file yet, "would present a substantial question and" that "there is good cause for a stay." Fed. R. App. Proc. 41(d); *see also Khulumani v. Barclay Nat. Bank Ltd.,* 509 F.3d 148, 152 (2d Cir. 2007). "[T]he standard for presenting a 'substantial question' is high" and requires an "'exceptional' showing." *United States v. Silver*, 954 F.3d 455, 458 (2d Cir. 2020) (quoting *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007)). Specifically, PBGC must demonstrate (1) "a reasonable probability that four justices will vote to grant certiorari," and (2) "a fair prospect that five justices will vote to reverse the Panel's judgment." *Id*. (cleaned up). Additionally, even if PBGC could show this, a stay is discretionary—it "is not a matter of right, even if irreparable injury might otherwise result.'" *Id*. (quoting *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (per curiam)).[1] PBGC falls well short of meeting its burden.

---

[1] PBGC erroneously cites the 3-factor test from *Hollingsworth v. Perry*, 558 U.S. 183 (2010), but that is the test for a stay by the Supreme Court of a judgment pending review, not the standard for whether a court of appeals will withhold its mandate.

3

**I.     The petition does not present a circuit split, a conflict with Supreme Court precedent, or any other "substantial question."**

PBGC concedes that it has not even decided whether to file a petition yet. Mot. at 2. PBGC also admits that there is no circuit split on this question and does not identify any pending cases anywhere that could create a circuit split in the future, or any Supreme Court precedent with which the Court's opinion conflicts.

Nevertheless, PBGC erroneously claims that *if* it did file a petition, there is a reasonable possibility the petition would be granted "[g]iven the importance of determining the criteria for SFA eligibility and the amount of taxpayer dollars at stake." Mot. at 6. But PBGC concedes, as it must, that the universe of plans potentially eligible for SFA under the Court's opinion is a closed one and that the deadline for any plan to apply for SFA closes in a matter of months. Mot. at 7. Thus, the Court's decision applies to a relatively small group of entities in a program nearing its completion and where there is no circuit split. This is not the stuff of Supreme Court review.[2]

---

[2] PBGC also makes much of its assertion that "neither party advocated" the Second Circuit's interpretation of Section 1432 prior to oral argument. Mot. 4, 5, 5 n. 8. It is hard to see how that is relevant to PBGC's motion to stay this Court's mandate. In any event, PBGC is wrong—as the district court recognized, the Fund raised that argument. *See* Opinion and Order, Dkt No. 33 (noting that the Fund "assert[ed] that its pre-January 1, 2020 termination is irrelevant to its eligibility" and citing the Fund's opening and reply briefs in support of summary judgment). PBGC's argument that the Fund "explicitly conceded" that it did not have "zone status", Mot. 5 n. 8. misleadingly conflates the Fund's argument about eligibility for SFA under Section 1432 with zone status under PBGC regulations.

4

In any event, PBGC overstates the impact of the Court's decision. According to PBGC, the *potential* impact of this Court's decision if *all* other potentially eligible plans apply for it is about $6 billion. Mot. at 11. That is less than 10% of the total estimated cost of the SFA program.³ And even if all those plans received SFA, PBGC's actual cost would still be projected to be *lower* than the $80 billion previously estimated by PBGC.⁴ There is therefore no basis whatsoever for PBGC's claim that this amount would be "far beyond what the statute contemplated." Mot. at 6.

Moreover, PBGC already presented these arguments to the Court and the Court rightly rejected them, recognizing that "[w]hile we are sympathetic to these difficulties, '[i]t is Congress's job to craft policy and ours to interpret the words that codify it.'" *Bd. of Trs. of Bakery Drivers Loc. 550 & Indus. Pension Fund*, 136 F.4th at 231 (quoting *Lackey v. Stinnie*, ⎯⎯ U.S. ⎯⎯, 145 S. Ct. 659, 669, 221 L.Ed.2d 63 (2025)).

---

³ Footnote 9 of the PBGC's Motion cites a PBGC Inspector General report, http://www.oversight.gov/sites/default/files/documents/reports/2025-06/SR-2025-09.pdf. That report reflects that PBGC's most recent estimate was that the SFA program would pay out approximately $80 billion. *Id.* at 2.

⁴ The PBGC's Inspector General report reflects that it has approved $68.6 billion in SFA, is reviewing 24 applications requesting $1.8 billion, and has 48 other plans on a waiting list requesting $1.3 billion. *Id.* at 2-3. That is a total of $71.7 billion. Adding the full $6 billion to that amount (assuming all plans apply) would bring the total estimated SFA payments to a maximum of $77.7 billion ($71.7 existing plans + $6 terminated plans). That is less than the PBGC's own estimate of $80 billion of the total SFA payments.

In sum, neither the legal nor practical consequences of this Court's decision suggest that the Supreme Court would grant PBGC's hypothetical petition, let alone reverse the decision. Indeed, PBGC already sought rehearing on the ground that the opinion raised a substantial question and this Court denied the petition without even calling for a response. This Court should deny PBGC's motion.

## II. PBGC provides no "good cause" for a stay.

PBGC also has not shown "good cause" for a stay. Fed. R. App. Proc. 41(d). PBGC does not identify any irreparable harm this Court would prevent by granting its motion. All of the harms PBGC alleges concern the possibility that *other* plans may apply for SFA, and may—or may not—be awarded SFA. As discussed above, those harms (in addition to being overblown) stem from the existence of this Court's decision, not issuing the mandate in this case. This Court's decision "bec[ame] binding precedent when it [was] decided," and the "fact that a mandate has not yet issued means only that jurisdiction over the case has not yet shifted back to the district court; it does not undermine the immediate precedential weight of [this Court's] decision." *Cox v. Dep't of Just.*, 111 F.4th 198, 209 (2d Cir. 2024). So, regardless of whether or not the Court stays the *mandate*, its decision remains the opinion of the Court and has whatever binding or persuasive effect it has on those other applications.

On the other hand, staying the mandate harms the Fund and many of its retirees, because it delays returning jurisdiction to the district court to carry out this Court's instructions *in this case*. The Funds' retirees' pension benefits already were reduced substantially when the Fund became insolvent. Many of the pensioners who rely on the 550 Fund's benefits may resort—or by now, already have resorted—to drastic measures, upending their lives, such as selling a home (JA612-13, 620-21 (Degruccio Decl. ¶¶ 9-10; Ferranti Decl. ¶ 9), moving, JA624 (Livingston Decl. ¶ 11), and foregoing medical treatment, JA611-12, 616, 620, 624 (Degruccio Decl. ¶¶ 5-6, 11; Dolson Decl. ¶¶ 8-10, Ferranti Decl. ¶¶ 5, 7; Livingston Decl. ¶ 9). While PBGC's speculative concerns about vast numbers of other applications have not yet come to pass, the Fund's participants are experiencing harms right now. Those harms continue and grow worse the longer PBGC succeeds in delaying providing assistance. PBGC even recognized all of this in the district court and agreed to expedited consideration of the issues presented because of those harms. Dkt No. 21 (Stipulated Order).

For the reasons described above, PBGC's motion should be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **MORGAN, LEWIS & BOCKIUS LLP** |
| Dated: July 28, 2025 | <u>s/ Jeremy P. Blumenfeld</u><br>Jeremy P. Blumenfeld<br>2222 Market Street<br>Philadelphia, PA 19103<br>T: (215) 963-5258<br>F: (215) 963-5001<br>jeremy.blumenfeld@morganlewis.com<br><br>Douglas A. Hastings<br>Brendan J. Anderson<br>1111 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>T: (202) 739-5669<br>F: (202) 739-3001<br><br>*Counsel for Appellant* |

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2) because this document contains 1,514 words and complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in 14-point, Times New Roman font.

Dated: July 28, 2025  *s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld

## CERTIFICATE OF SERVICE

I certify that, on July 28, 2025, the foregoing was electronically filed through this Court's ACMS system, which will send a notice of filing to all registered users. All attorneys in this case are filing users.

*s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld
